**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lee Jones, Jr., | No. CV-17-01547-PHX-DJH (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| C. Nash, et al., | |
| Defendants. | |

Pending before the Court are two motions: (1) Plaintiff's Motion for Entry of Default (doc. 14), and (2) Defendant's Motion for the Court to Screen Plaintiff's First Amended Complaint (doc. 22). For the reasons that follow, the Court will deny Plaintiff's Motion and grant Defendant's Motion.

**I.  Background.**

On May 19, 2017, Plaintiff, who is confined in the Arizona State Prison Complex - Eyman in Florence, Arizona, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) On June 6, 2017, the Court screened the Complaint, ordered Defendant Woods to answer the medical care claim in Count Two, and ordered Plaintiff to serve Defendant Woods within 90 days of the filing of the Complaint, or within 60 days of the date of the Order. (Doc. 5.) The Court further ordered that Defendant Woods must answer the medical care claim in Count Two of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure. (*Id.*)

> (A) A defendant must serve an answer…(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the Defendant outside any judicial district of the United States. Fed. R. Civ. P. 12(a)(1)(A)(ii)

Fed. R. Civ. P. 12(a)(1)(A)(ii)

On July 12, 2017, a Process Receipt and Return was filed with the Court with an attached Waiver of the Service of Summons signed by Defendant Woods, making September 11, 2017 his deadline to file a responsive pleading. (Doc. 7.) As of September 15, 2017, the Court's docket reflected that an answer had not been filed. Accordingly, the Court issued an Order requiring Defendant Woods to file a responsive pleading pursuant to Rule 12 of the Federal Rules of Civil Procedure on or before September 29, 2017. (Doc. 12.)

On October 11, 2017, Defendant Woods having failed to file a responsive pleading, and Plaintiff having taken no further action, the Court issued an Order for Plaintiff to show cause in writing why the claims against Defendant Woods should not be dismissed for failure to prosecute no later than November 3, 2017, unless a responsive pleading pursuant to Rule 12 of the Federal Rules of Civil Procedure or an application for entry of default pursuant to Rule 55(a) was filed within such time. On October 17, 2017, Plaintiff filed a Motion for Entry of Default (doc. 14), and a First Amended Complaint against Defendants Lao, Meyers, Nash, and Woods (doc. 16)[1].

On October 24, 2017, Defendant Woods filed a Motion for Leave to File Untimely Answer indicating an administrative error as the cause of delay in filing an appropriate answer in this matter and that the delay was inadvertent and not intentional. (Doc. 17.) On October 25, 2017, the Court granted Defendant's Motion, accepted Defendant's untimely Answer, and ordered the Clerk of the Court to file Defendant's Answer lodged

---

[1] On January 2, 2018, Plaintiff filed a duplicate first amended complaint. (*See* Doc. 28.) Because to the documents are identical, the Court will identify the first filed document (doc. 16) when referencing or citing the Plaintiff's First Amended Complaint.

at Doc. 18. (Doc. 19.) On November 3, 2017, Defendant Woods filed a Motion to Screen the First Amended Complaint. (Doc. 22.)

## II. Plaintiff's Motion for Entry of Default.

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Thus, the entry of the default is not discretionary, but is simply dependent upon the party's failure to defend.

Here, Defendant Woods has filed an answer (doc. 20), and has filed a Motion requesting that the Court screen Plaintiff's First Amended Complaint (doc. 22). The Court finds that Defendant Woods has not failed to appear and defend in this action.

## III. Defendant's Motion for the Court to Screen Plaintiff's First Amended Complaint.

The Court will grant Defendant's Motion to Screen Plaintiff's First Amended Complaint.

### A. Statutory Screening of Plaintiff's First Amended Complaint.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc). Plaintiff's Complaint will be dismissed for failure to state a claim, but because it may possibly be amended to state a claim, the Court will dismiss it with leave to amend.

### B. Plaintiff's First Amended Complaint.

In his four-count Amended Complaint, Plaintiff sues the following Defendants in their individual and official capacities: Corizon Health (Corizon) Licensed Practical Nurse C. Nash, Sergeant/Shift Supervisor Woods, Deputy Warden Lao, and Corizon Registered Nurse Unknown Myers. In his Request for Relief, Plaintiff seeks declaratory relief, monetary damages, his attorney's fees, and his filing fees.

#### 1. Count One.

In Count One, Plaintiff alleges that Defendant Nash violated his Eighth Amendment rights regarding medical care. (Doc. 22 at 3-6.) Plaintiff asserts that on

1  June 15, 2015, during lunch, a food object became lodged in his esophagus. He contends
2  that he spent two hours unsuccessfully attempting to clear the object himself and then
3  told two correctional officers about his situation and his "urgent need" for medical
4  attention. Plaintiff claims that one of the officers contacted the medical department and
5  that Defendant Jane Doe told the officer to inform Plaintiff that he would not be seen at
6  that time and that he would need to submit a health needs request form and would be seen
7  the following day.

8  Plaintiff claims that approximately four hours after the food had become lodged in
9  his esophagus, he spoke to Defendant Woods. Approximately one hour after Defendant
10 Woods had departed from the unit, Plaintiff's cell was unlocked so his cellmate could use
11 the phone. Plaintiff alleges that because he feared collapsing and felt he had no other
12 option to obtain medical attention, Plaintiff refused to be locked back down in his cell.
13 Plaintiff asserts that he told housing officials that he had been hospitalized in 2009 for the
14 same issue and that he "feared he would not be as lucky [this time] and his air would be
15 cut off if he even attempted to sleep with the food object lodged in his esophagus."
16 Plaintiff alleges that a correctional officer activated an Institutional Command Structure
17 (ICS) and that Defendant Woods and others responded.

18 Plaintiff claims Defendant Woods handcuffed him with his hands behind his back
19 and aggressively walked Plaintiff across the yard, where he remained handcuffed despite
20 the food object still being lodged in his esophagus. Plaintiff alleges that Defendant
21 Apples eventually arrived, spoke to Plaintiff, and, after getting a better understanding of
22 the issue and "finding Plaintiff's request to be reasonable," asked Plaintiff if he would
23 return to his cell if he was seen by the medical staff. Plaintiff asserts that he agreed and
24 that Defendant Apples spoke to Defendant Nash and also instructed Defendant Woods on
25 how to document the incident.

26 Plaintiff contends that he saw Defendant Nash, but Defendant Nash failed to
27 conduct a "basic medical assessment," which would have begun with a review of
28 Plaintiff's medical file and would have revealed that Plaintiff had previously dealt with

the same issue; failed to check Plaintiff's vital signs; failed to perform a "visual assessment to see whether or not Plaintiff actually had a food object lodged in his esophagus"; and failed to check Plaintiff's breathing. Instead, Defendant Nash spoke to Plaintiff and, because Plaintiff was able to talk, concluded that Plaintiff was fine. Plaintiff asserts that Defendant Nash contacted Defendant Hegman and proposed a treatment plan, but did not discuss the plan with Plaintiff. Plaintiff claims that he was returned to his housing unit with the food object still lodged in his esophagus and that it took him another hour and a half to eventually force the food down his esophagus with water. Plaintiff claims the food object was lodged in his esophagus for over eight hours, during which he was in pain and feared for his life, and that he suffered additional pain when he was "made to force the food object down by applying mass pressure by swallowing water."

Plaintiff alleges that the following day, June 16, 2015, he was transferred to a different unit. On June 17, 2015, he was allegedly assessed by the medical staff at that unit, who visually inspected his throat and esophagus and discovered that Plaintiff's esophagus had swelled, which "restrict[ed] . . . passage of his food from being swallowed without getting stuck." Plaintiff alleges that a nurse found bacteria in Plaintiff's esophagus because of the length of time the food object was stuck there. Plaintiff claims he was placed back on omeprazole, the generic form of a medication he had been prescribed when a similar situation occurred in 2009.

### 2. Count Two.

In Count Two, Plaintiff contends that Defendant Woods violated his Eighth and Fourteenth Amendment rights by denying Plaintiff medical treatment, using excessive force, and "conspir[ing] to falsify documentation to cover-up the acts and omissions." Plaintiff asserts that on June 15, 2015, he explained to Defendant Woods that he needed medical attention because he had a piece of food lodged in his esophagus and had been unable to dislodge it with water. Plaintiff claims Defendant Woods told Plaintiff that he appeared to be fine and was able to talk and that the only way Plaintiff was going to get

medical attention was to "fall-out and bust your head on the concret[e]." Plaintiff asserts that he told Defendant Woods about the 2009 incident, explaining that he had been able to talk then, despite food being lodged in his esophagus, that medical staff at that time had concluded that he was fine because he was talking, and that Plaintiff had passed out because he had become dehydrated from the food being lodged in his esophagus for eighteen hours. Plaintiff contends that Defendant Woods stated that there was nothing he could do, that "medical was gone," and that Plaintiff should submit a health needs request form.

Later, after Plaintiff refused to lock down and an ICS was activated, Defendant Woods returned. Plaintiff claims Defendant Woods, who had a clear understanding of Plaintiff's situation and was upset because an ICS had occurred during his shift, disregarded Plaintiff's complaint that food was stuck in his esophagus and "immediately jerked" Plaintiff's arm, handcuffed Plaintiff with his hands behind his back, and escorted Plaintiff "with force" to "count movement." Plaintiff claims he sat there for two and a half hours, handcuffed, "spitting out his saliva in order to prevent it filing his mouth [because] his ability to swallow was restricted."

Plaintiff claims that he was subsequently asked a few questions by Defendant Nash after Defendants Nash and Apples had a conversation. Plaintiff contends that after he was denied medical treatment, Defendants Apples and Woods "conspir[ed] in the documentation of the incident," retroactively classifying it as a Medical ICS. Plaintiff asserts that if the incident had been a Medical ICS, he would not have been handcuffed or issued a disciplinary infraction. Plaintiff claims he returned to his cell, despite being untreated, because he had promised to do so and he did not want to be sent to the Special Management Unit, which was something Defendant Apples initially had threatened to do.

Plaintiff asserts that Defendant Woods, as shift supervisor, could have activated a Medical ICS and could have contacted the on-call doctor to have Plaintiff treated. However, Defendant Woods denied Plaintiff medical care, endangered Plaintiff's life, and treated Plaintiff like a criminal because he wanted to avoid having an ICS on his shift

and having to complete additional paperwork.

### 3. Count Three.

In Count Three, Plaintiff alleges that Defendant Lao violated Plaintiff's Eighth and Fourteenth Amendment rights by retaliating against Plaintiff for seeking medical assistance and for causing an ICS when he was unable to obtain it. Plaintiff asserts that on June 16, 2015, Defendant Lao instructed prison officials to prepare to transfer Plaintiff to a maximum custody unit where Plaintiff would be locked down 24 hours per day. Plaintiff asserts that Defendant Lao transferred Plaintiff in retaliation for the ICS. Plaintiff also states that Defendant Lao subsequently justified the transfer by "illegal[ly] utilizing the guise of a '2A investigation.'" Plaintiff further asserts that the transfer "did not reasonably advance a legitimate correctional goal, but only extended [Plaintiff's] pain and suffering mental anguish."

### 4. Count Four.

In Count Four, Plaintiff alleges that Defendant Meyers violated his Eighth and Fourteenth Amendment rights regarding medical care. Plaintiff asserts that after an officer contacted Defendant Meyers and explained that Plaintiff was complaining about having a food object lodged in his esophagus and being unable to eat or drink, Defendant Meyers instructed the officer to tell Plaintiff that he should submit a health needs request form and that he would be seen the following day. Plaintiff asserts that Defendant Meyers denied him medical attention because she wanted to go home, even though the officer contacted her more than an hour before she actually left. Plaintiff contends that Defendant Meyers could have done a quick assessment of Plaintiff to make sure Plaintiff's life was not in danger and could have checked Plaintiff's medical records, which would have revealed the 2009 incident.

### C. Discussion of First Amended Complaint.

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a

liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### 1. Count One.

Count One of Plaintiff's First Amended Complaint is virtually identical to Count One of Plaintiff's Original Complaint. (*Compare* Doc. 16 at 3-6 *with* Doc. 1 at 5-8.) Accordingly, the Court will adopt its analysis from its June 6, 2017 Screening Order as to Count One (doc. 5 at 3-5, 13), and dismiss Count One without prejudice and Defendant Nash.

### 2. Count Two.

In Count Two, Plaintiff alleges that Defendant Woods, despite being aware of Plaintiff's current medical problem and having information regarding Plaintiff's 2009 incident, refused Plaintiff's request for medical attention, told Plaintiff that the only way he would get medical attention was to "fall-out and bust your head on the concret[e]," and subsequently handcuffed Plaintiff with his hands behind his back for two hours while Plaintiff was spitting out the saliva accumulating in his mouth. Liberally construed, Plaintiff has stated an Eighth Amendment medical care claim against Defendant Woods in Count Two. The Court will require Defendant Woods to answer the medical care claim in Count Two.

To the extent Plaintiff is attempting to allege claims for excessive force against Defendant Woods, and conspiracy against Defendants Woods and Apples, the Court

- 9 -

finds Plaintiff's allegations to be virtually identical to those contained in Count Two of his Original Complaint. (*Compare* Doc. 16 at 7-10 *with* Doc. 1 at 9-11.) Accordingly, the Court will adopt its analysis from its June 6, 2017 Screening Order as to Plaintiff's excessive force and conspiracy claims (doc. 5 at 5-6, 15), and dismiss those claims without prejudice.

### 3. Count Three.

In Count Three, Plaintiff alleges that Defendant Lao retaliated against Plaintiff for causing an ICS when he was unable to obtain medical care. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Here, Plaintiff claims that Defendant Lao had Plaintiff transferred to a maximum custody unit where Plaintiff would be locked down 24 hours per day and that the transfer was done to get Plaintiff off the unit and did not further any legitimate correctional goal. Plaintiff appears to allege that Defendant Lao later attempted to cover up the improper transfer "illegal[ly] utilizing the guise of a '2A investigation.'" But it is unclear whether the "2A investigation" was an investigation regarding the disciplinary report Plaintiff received for refusing to return to his cell or for some other infraction.

Accordingly, Plaintiffs allegations do not support a claim that the exercise of his

rights was a substantial or motivating factor behind the transfer or that the transfer did not advance a legitimate penological interest. Moreover, Plaintiff does not allege that his First Amendment rights were chilled or that being transferred from his close custody unit to a maximum custody unit caused him to suffer more than minimal harm. Thus, the Court will dismiss without prejudice Count Three and Defendant Lao.

### 4. Count Four.

In Count Four, Plaintiff alleges that after being informed of Plaintiff's complaint of food being lodged in his esophagus, Defendant Meyers failed to examine Plaintiff and, instead, directed a corrections officer to tell Plaintiff that he should submit a health needs request form and would be seen the following day. Plaintiff further asserts that Defendant Meyers did not check Plaintiff's medical records or assess his condition because she wanted to go home for the day. Liberally construed, Plaintiff has stated an Eighth Amendment medical care claim against Defendant Meyers in Count Four. The Court will require Defendant Meyers to answer the medical care claim in Count Four.

**IT IS ORDERED:**

1. Plaintiff's Motion for Default (doc. 14) is **denied**.

2. Defendant's Motion for Screening of the First Amended Complaint (doc. 22) is **granted.**

3. Counts One and Three are **dismissed** without prejudice. The excessive force and conspiracy claims in Count Two are also **dismissed** without prejudice.

4. Defendants Nash and Lao are **dismissed** without prejudice.

5. Defendant Woods must answer the medical care claim in Count Two.

6. Defendant Meyers must answer the medical care claim in Count Four.

7. The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Meyers.[2]

---

[2] Defendant Woods has already waived service and appeared in this matter. (Doc. 7.)

8. Plaintiff must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

9. If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

10. The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

11. The United States Marshal must notify Defendant Meyers of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return

---

[3] If Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

12. **If Defendant agrees to waive service of the Summons and Complaint, he must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

13. Defendant Meyers must answer the medical care claim in Count Four of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

14. This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

**Dated** this 23rd day of January, 2018.

Honorable Diane J. Humetewa
United States District Judge